# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00802-COA

**KEDRIC NORWOOD A/K/A KEDRICK KEVON NORWOOD**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/2021 |
| TRIAL JUDGE: | HON. JAMES McCLURE III |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | CYNTHIA ANN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 09/06/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Kedric Norwood appeals from the Panola County Circuit Court's order denying on the merits his motion for post-conviction collateral relief (PCR). On appeal, Norwood raises several issues, which we have restated as follows: (1) the revocation of his post-release supervision (PRS) violated his due process rights; and (2) his trial attorney provided ineffective assistance of counsel. Finding no reversible error, we affirm the circuit court's order.

## FACTS

¶2.     On February 5, 2015, Norwood pled guilty in Cause Number CR2011-048JMP1 to

simple assault of a law enforcement officer and grand larceny of property valued over $5,000 but less than $25,000. On April 14, 2015, the circuit court sentenced Norwood to serve five years in the custody of the Mississippi Department of Corrections (MDOC) for the assault conviction and to a consecutive term of ten years of PRS, with five years reporting and five years nonreporting, for the grand-larceny conviction.

¶3. After Norwood began serving his PRS in Cause Number CR2011-048JMP1, a grand jury returned a five-count indictment against him on May 2, 2018, in Cause Number CR2018-024JMP1. On July 10, 2019, Norwood's probation officer, Luther Folson Jr., signed an affidavit alleging that Norwood had violated the conditions of his PRS in Cause Number CR2011-048JMP1 by failing to report to MDOC since February 5, 2019. Based on Officer Folson's affidavit, the circuit court issued a bench warrant on August 5, 2019, for Norwood's arrest. On October 22, 2019, Norwood failed to appear and enter his plea in the five-count indictment in Cause Number CR2018-024JMP1. Thus, on October 28, 2019, the circuit court issued another bench warrant related to that matter for Norwood's arrest.

¶4. Norwood was eventually taken into custody on January 22, 2021. On the same date, Norwood was served with the bench warrants in both cause numbers. While in custody, Norwood received a summons on February 11, 2021, to appear in circuit court on February 18, 2021, to answer for his alleged PRS violation in Cause Number CR2011-048JMP1. Norwood and his attorney appeared before the circuit court on February 22, 2021, and requested a hearing on the allegations that Norwood had failed to report to MDOC as required by the terms of his PRS.

2

¶5. On that same date, the circuit court held a formal revocation hearing. At the revocation hearing, the State called Officer Folson to testify. Officer Folson stated that Norwood had not complied with his reporting requirement since February 5, 2019. Officer Folson further stated that he had tried to call Norwood multiple times in March, April, May, and June 2019 to remind Norwood of the need to comply with his duty to report. After failing to reach Norwood by phone, Officer Folson tried on two separate occasions to speak to Norwood in person at Norwood's residence. Officer Folson was unable to locate Norwood on either occasion, and he testified that he left a letter with Norwood's father on the second occasion. The letter advised Norwood of his duty to report, and Norwood's father assured Officer Folson that he would give Norwood the letter. Officer Folson testified, however, that Norwood remained delinquent in his duty to report to MDOC.

¶6. Following Officer Folson's testimony, Norwood testified on his own behalf. Norwood claimed that he lacked any knowledge of Officer Folson's attempts to contact him. He further asserted that he attempted to contact Officer Folson on one occasion but was told Officer Folson was out of the office. Norwood stated that on several other occasions he had contacted two MDOC probation officers other than Officer Folson and that he therefore had not absconded or failed to comply with his duty to report.

¶7. After both parties rested, the circuit court found that the State had presented sufficient credible evidence to establish that Norwood failed to report to MDOC as required for almost two years (from February 5, 2019, until his arrest on January 22, 2021). The circuit court further found that sufficient credible evidence existed to show Norwood had absconded

3

under Mississippi Code Annotated section 47-7-37.1 (Rev. 2015). As a result of these findings, the circuit court revoked all ten years of Norwood's PRS and credited Norwood for the time spent in detainment while he awaited his formal revocation hearing.

¶8. Norwood filed an unsuccessful PCR motion in which he asserted that the revocation of his PRS violated his due process rights and that his trial attorney provided ineffective assistance of counsel. Aggrieved by the circuit court's denial of his PCR motion on the merits, Norwood appeals.

## STANDARD OF REVIEW

¶9. We review the circuit court's "dismissal or denial of a PCR motion for abuse of discretion" and "will only reverse if the [circuit] court's decision is clearly erroneous." *Hunt v. State*, 312 So. 3d 1233, 1234 (¶6) (Miss. Ct. App. 2021) (quoting *Carr v. State*, 291 So. 3d 1132, 1137 (¶16) (Miss. Ct. App. 2020)). We apply de novo review to questions of law. *Id.*

## DISCUSSION

### I. Due Process

¶10. Norwood asserts that multiple errors related to the revocation of his PRS violated his due process rights. Specifically, Norwood alleges the following: (1) the circuit court not only lacked sufficient grounds to revoke all his PRS but also considered unrelated charges in reaching its determination; (2) he did not receive a timely revocation hearing; and (3) in revoking all his PRS, the circuit court imposed a sentence that was twice the statutory maximum for the crime committed.

4

### a. Revocation of PRS

¶11. The warrant for Norwood's arrest charged Norwood with failing to report to MDOC as ordered and with absconding. Norwood argues, though, that he did not meet the statutory definition of "absconding" at the time the circuit court issued his arrest warrant and that the circuit court therefore lacked a sufficient basis for revoking his PRS. In addition, Norwood argues that he lacked proper notice of the basis for his PRS revocation because the circuit court considered additional charges not identified in the arrest warrant in making its decision.

¶12. As discussed, the arrest warrant stated that Norwood had absconded from MDOC's supervision. Relevant to this charge, section 47-7-37.1 provides the following:

> Notwithstanding any other provision of law to the contrary, if a court finds by a preponderance of the evidence, that a probationer or a person under [PRS] has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence. For purposes of this section, "absconding from supervision" means the failure of a probationer to report to his supervising officer for six (6) or more consecutive months.

¶13. On appeal, Norwood contends that the circuit court lacked sufficient grounds to revoke all his PRS on the basis of absconding from supervision. Norwood points out that his probation did not begin until he finished his parole on April 9, 2019. He further notes that when the circuit court issued the August 5, 2019 bench warrant for his arrest, he had been on probation for only four months rather than the six months referenced in section 47-7-37.1. As a result, Norwood alleges that at the time the warrant was issued, his failure to report did not satisfy the statutory definition of "absconding." In addition, Norwood testified at the hearing that he experienced several significant medical issues and underwent multiple surgeries in 2019. Even with his injuries, Norwood stated that he had spoken to two different

5

probation officers by phone and in person on several occasions. Despite acknowledging that he had the ability to not only make phone calls but to—at times—physically travel, Norwood admitted that he still never made contact with Officer Folson.

¶14. In response to Norwood's arguments, the State asserts that even if Norwood's actions did not meet the statutory six-month requirement when the circuit court issued the arrest warrant on August 5, 2019, the revocation-hearing evidence established that the requirement had been satisfied by the time the warrant was served on Norwood. When Norwood was arrested on January 22, 2021, almost a year and a half had passed since the issuance of the warrant. At the revocation hearing, Officer Folson testified that Norwood knew of his duty to report monthly to Officer Folson, that Norwood willfully failed to comply with the reporting requirement, and that Norwood's failure to report continued for nearly two years.

¶15. After considering the parties' evidence, the circuit court found Officer Folson's testimony was credible and concluded the State had established by a preponderance of the evidence that Norwood absconded in violation of the terms of his PRS. Because the revocation-hearing transcript contains evidence to support the circuit court's finding that at the time of his arrest, Norwood had willfully failed to report to MDOC for six or more consecutive months as required, we find no error in the circuit court's revocation of Norwood's PRS on that basis. *But see White v. State*, 311 So. 3d 1278, 1283-84 (¶¶14-15) (Miss. Ct. App. 2021) (setting aside the revocation of a movant's PRS where the only relevant record evidence indicated that through no fault of his own, the movant had been unable to report to MDOC, and the revocation therefore violated his due process rights).

¶16. In reaching our determination here, we do not overrule our earlier holding in *White* but simply recognize that Norwood's circumstances are distinguishable. As stated in *White*, the evidence established that due to circumstances beyond his control (i.e., homelessness), the movant had no transportation and therefore could not report as required. *Id.* By contrast, Norwood's own testimony demonstrated that he knew about his duty to report to Officer Folson, and he had the ability to fully comply with his duty to report to Officer Folson; he nevertheless failed to do so. We therefore find that any alleged error as to this issue lacks merit.

¶17. As previously discussed, Norwood also asserts that the circuit court did not base its revocation decision solely on the charge of absconding from supervision but instead "relied on new charges" not contained in the arrest warrant. Based on this alleged error, Norwood argues that he failed to receive proper notice of the reasons for his PRS revocation. Other than his own bare assertions, however, Norwood has failed to point to any evidence or instances in the revocation proceedings to support his claim. *See* M.R.A.P. 28(a)(7) (stating the appellant's duty to support his appellate arguments "with citations to the authorities, statutes, and parts of the record relied on"). Moreover, the transcript of the revocation hearing directly refutes Norwood's allegations.

¶18. As reflected in the transcript of the proceedings, the circuit court made no reference to any "new charges" in reaching its determination and instead confined the basis for its decision to the abscondment charge provided in Norwood's arrest warrant. Specifically, the circuit judge stated:

7

[T]here is ample proof to show that the defendant has the burden to report[,] and he did not do so. And since it's been over two years since he has reported, that's more than six months, which according to the law he has absconded. The State is entitled [for] the ten years of his post-release supervision to be revoked, [and] the Court is going to revoke all ten years.

¶19. Thus, based on our review of the record, we find Norwood's assertions lack merit.

### b. Timeliness of the Revocation Hearing

¶20. Norwood also challenges the timeliness of his revocation hearing. In doing so, he argues that under Mississippi Code Annotated section 47-7-37(3) (Supp. 2018), the circuit court should have released him from custody and returned him to probation status because his revocation hearing was not held within twenty-one days of his arrest. He also asserts that the circuit court should have dismissed his probation-revocation charge under Mississippi Code Annotated section 47-7-37(10) because his revocation hearing was not held within thirty days of the issuance of his arrest warrant, and no "good cause" was shown for the delay.

¶21. In relevant part, section 47-7-37(3) states:

If reasonable cause is found, the offender may be confined no more than twenty-one (21) days from the admission to detention until a revocation hearing is held. If the revocation hearing is not held within twenty-one (21) days, the probationer shall be released from custody and returned to probation status.

¶22. Our caselaw recognizes Norwood's "constitutional right to a timely revocation hearing." *Easterling v. State*, 238 So. 3d 1174, 1176 (¶9) (Miss. Ct. App. 2017). Here, however, Norwood "has not even attempted to show that any prejudice resulted from the delay, which is a prerequisite for relief." *Id.* at 1177 (¶9). As a result, Norwood not only has

8

failed to establish that any "prejudice to [him] ar[ose] out of the failure to conduct the hearing" but also that any alleged prejudice "extend[ed] beyond the issue of the State's right to continue his confinement in the interim." *Presley v. State*, 48 So. 3d 526, 530 (¶13) (Miss. 2010) (quoting *Rusche v. State*, 813 So. 2d 787, 790 (¶13) (Miss. Ct. App. 2002)).

¶23. In addition, the record reflects that Norwood's incarceration was not due solely to the pending decision about whether to revoke his PRS but also was due to his failure to appear in court and enter his plea to charges in a separate matter. "Because [Norwood] was incarcerated on other charges, he cannot show he was illegally imprisoned because of [a] delay" in his revocation hearing. *Friday v. State*, 141 So. 3d 18, 21-22 (¶12) (Miss. Ct. App. 2014).

¶24. For the reasons stated above, we cannot find that any prejudice to Norwood resulted as he awaited his revocation hearing. Based on the circumstances of this particular case and the absence of any prejudice, we conclude that, at most, any delay in Norwood's revocation hearing constituted harmless error.

¶25. As discussed, Norwood also argues that his revocation hearing occurred more than thirty days after the issuance of his arrest warrant without good cause being shown. Section 47-7-37(10) provides that "[u]nless good cause for the delay is established in the record of the proceeding, the probation[-]revocation charge shall be dismissed if the revocation hearing is not held within thirty (30) days of the warrant being issued."

¶26. It is undisputed that about a year and a half elapsed between the issuance of Norwood's arrest warrant and the date of his revocation hearing. Credible record evidence

establishes, however, that any delay in holding Norwood's revocation hearing was due to Norwood's abscondment. Although the circuit court did not explicitly find that Norwood's abscondment established "good cause for the delay" in his revocation proceeding, the evidence in the record supports such a finding.

¶27. Further, as we have previously recognized, section 47-7-37.1 "provides that, 'notwithstanding any other provision of law to the contrary,' a court may still revoke probation or a suspended sentence and impose any or all of the sentence on a finding that the probationer has committed a new felony or absconded." *Phillips v. State*, 236 So. 3d 840, 842 (¶7) (Miss. Ct. App. 2018) (quoting Miss. Code Ann. § 47-7-37.1). When a court makes such a finding, "the statute [does] not prohibit revocation no matter how much time ha[s] passed since [the probationer] was arrested on the revocation warrant." *Id.* Here, because Norwood failed to report to MDOC for more than six consecutive months and could not be contacted at the address he provided, the circuit court found that he had absconded. Once the circuit court determined that Norwood had absconded, section 47-7-37.1 provided discretion for the circuit court to revoke Norwood's PRS "notwithstanding" the thirty-day period set forth in section 47-7-37(10). We therefore find no merit regarding this alleged assignment of error.

### c. Imposition of Sentence

¶28. Norwood argues his original sentence for grand larceny was illegal because the maximum statutory sentence for his crime was only five years. Based on this assertion, Norwood contends that the circuit court imposed an illegal sentence when it revoked all ten

10

years of his PRS.

¶29. In recently addressing a similar argument, this Court explained:

> While Mississippi Code Annotated section 47-7-34 [(Rev. 2015)] unquestionably limits to five years the period of time that the MDOC may supervise an offender who is on [PRS], *the clear language of the statute does not limit the total number of years of [PRS] to five years*. Under our laws, the total number of years of incarceration plus the total number of years of [PRS] shall not exceed the maximum sentence authorized to be imposed by law for the felony committed.

*Williams v. State*, 334 So. 3d 177, 184-85 (¶27) (Miss. Ct. App. 2022) (citations and internal quotation marks omitted).

¶30. As previously discussed, Norwood pled guilty to grand larceny of personal property worth more than $5,000 but less than $25,000. Contrary to Norwood's assertions on appeal, he could receive a maximum sentence of ten years for his crime. Miss. Code Ann. § 97-17-41(1) (Rev. 2005). Thus, the circuit court's sentence of ten years of PRS, with five years reporting and five years nonreporting, did not exceed the limits imposed by either section 47-7-34 or section 97-17-41(1). We therefore find no merit to Norwood's argument that the revocation of all ten years of his PRS resulted in the imposition of an illegal sentence.

## II. Ineffective Assistance of Counsel

¶31. Finally, Norwood asserts that his trial attorney rendered ineffective assistance of counsel by failing to raise the aforementioned issues during his revocation hearing. As support for his ineffective-assistance claim, Norwood attached to his PCR motion an affidavit in which his trial attorney stated he had "failed to raise constitutional due process, notice[,] and statutory and rule defects in the revocation process" and that the failure to raise

11

such issues "was not a strategic decision . . . ."

¶32.  To prove ineffective assistance of counsel, a movant must demonstrate "(1) that his counsel's performance was deficient, and (2) that this alleged deficiency prejudiced his defense." *Ellis v. State*, 334 So. 3d 187, 192 (¶15) (Miss. Ct. App. 2022) (quoting *Thompson v. State*, 119 So. 3d 1007, 1009 (¶5) (Miss. 2013)).  In establishing prejudice, the movant must show "a reasonable probability" exists "that, but for the errors of his counsel, the judgment would have been different."  *Id.* (quoting *Thompson*, 119 So. 3d at 1009 (¶5)).

¶33.  Here, even if Norwood's trial attorney had raised these issues before the circuit court, Norwood has failed to show a reasonable probability that the revocation proceeding would have ended differently.  As we have explained, each of Norwood's claims lack merit.  Thus, Norwood cannot establish that his attorney's allegedly deficient performance in raising these issues resulted in any prejudice to his defense.  We therefore find that this assignment of error also lacks merit and fails to entitle Norwood to any relief on the basis of ineffective assistance.[1]

## CONCLUSION

¶34.  Because we find no reversible error in the circuit court's order denying Norwood's PCR motion on the merits, we affirm.

_____

[1] We also note that in general, there is no right to counsel at revocation hearings. *Miss. State Prob. & Parole Bd. v. Howell*, 330 So. 2d 565, 566 (Miss. 1976).  Rather, a due process right to counsel only exists if the revocation involves issues that are "complex" or otherwise "difficult to develop or present." *Id.*  And "[w]here there is no constitutional right to counsel, there can be no deprivation of effective assistance." *Sheffield v. State*, 881 So. 2d 249, 255 (¶24) (Miss. Ct. App. 2003).  As discussed, Norwood's ineffective-assistance claim clearly lacks merit.  We therefore simply assume for purposes of this appeal that he had a right to counsel at his revocation hearing.

¶35. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**